IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SIDNEY SCOTT HUBBARD,

    Petitioner,                    No. CIV-S-02-0023 GEB KJM P

    vs.

TOM CAREY,

    Respondent.                 FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding with counsel with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his Sacramento County conviction for attempted robbery. Petitioner is currently serving a sentence of fifty-six years-to-life imprisonment.

I. <u>Background</u>

        Petitioner was found guilty by a jury. Petitioner appealed his conviction and sentence before the California Court of Appeal. In its decision regarding petitioner's appeal, the Court of Appeal summarized the facts surrounding petitioner's conviction as follows:

> The attempted robbery victim, Richard Askelson, was an employee of a convenience store in Rancho Cordova. On January 19, 1996, at about 2 a.m., defendant entered the store while Askelson was in the back locking a beer cooler. When Askelson turned to return to the checkout counter, he saw defendant reaching over the counter

1

> and into an open cash register drawer. Defendant said, "I want your money." Askelson replied, "That ain't going to work." Defendant said, "Do I have to shoot you to get your money?"
>
> Defendant said if Askelson gave him money, they could split it. Askelson refused. Defendant said he had warrants and needed to buy a bus ticket to Oregon. Askelson began to worry that a customer might enter the store and be hurt so he took two 10 dollar bills from the register, told defendant that was all there was and gave the money to defendant. Defendant thanked Askelson, hugged him and shook hands. Askelson told defendant to get out of the store.
>
> Askelson called 9-1-1 with a description of defendant's car. During the conversation, he told the 9-1-1 dispatcher that defendant said he had warrants and needed a bus ticket to Oregon. A tape of this conversation was played for the jury at trial.
>
> Police officers identified the suspect vehicle and effected a stop. (RT 290-291) A woman was driving. She exited. The passenger, who was defendant, was told to slide across the front seat and get out on the driver's side. He slid over, put his foot out of the door but then jumped back inside and sped off.
>
> During the pursuit defendant drove through a red light at a fairly busy intersection. At an even busier intersection, defendant ran another red light and tried to make a left turn but slid sideways over the curb and onto the sidewalk. The car hit a tree and stopped. After a brief chase on foot, defendant was taken into custody.[1]

Answer, Ex. D at 2-3.

The Court of Appeal affirmed petitioner's convictions and sentence. Id. at 16. Petitioner sought review of the Court of Appeal's decision in the California Supreme Court. Id., Ex. E. Petitioner's request for review was denied. Id., Ex. F. Petitioner then sought collateral relief at all three levels of California courts. Id., Exs. G, I & K. All three requests were denied. Id., Exs. H, J & L.

/////

/////

---

[1] At trial, petitioner was also convicted of evading a peace officer. Petitioner does not challenge that conviction in this action. Answer, Ex. D at 1.

2

II. Availability Of Habeas Corpus Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA"). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief). See also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[2] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by

/////

---

[2] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of appeal held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, the Fourth Circuit has erred. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

§ 2254(d)). It is the habeas petitioner's burden to show that he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an "independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state-court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

/////

4

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III. Analysis[3]

    A. Ineffective Assistance Of Counsel

Petitioner asserts his conviction for attempted robbery must be overturned because petitioner did not receive effective representation at trial.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court enunciated the standards for judging ineffective assistance of counsel claims.  First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at 688.  To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  Id.  Second, a defendant must affirmatively prove prejudice.  Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-18 (9th Cir. 1984) (per curiam).

Petitioner presented his ineffective assistance of counsel claims to the California Supreme Court on collateral review.  Answer, Ex. K at 7-10.  The claim was denied without comment.  Id., Ex. L.  No court issued a reasoned opinion with respect to petitioner's ineffective assistance of counsel claims.

---

[3] Respondents argue that petitioner has failed to exhaust state court remedies with respect to his claims as required under 28 U.S.C. § 2254(b)(1).  Answer at 10-12.  The court declines to reach respondents' argument, as a petition for writ of habeas corpus may be denied on the merits without exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2).

1. <u>Failure To Investigate</u>

Petitioner claims his trial counsel should have more thoroughly investigated petitioner's claim that Richard Askelson gave petitioner money from the register of the convenience store where Askelson worked so that petitioner could buy drugs for Askelson. Am. Pet. at 11:1-7. Petitioner does not, however, explain exactly what counsel should have done. Petitioner presents an affidavit from Richard Ward,[4] which reads in part as follows:

> I am also recently paroled from the State Prison system in Solano where I served a term of 4 years for armed robbery. While at this prison, I met [petitioner.] We had a lot in common because we were both from the same neighborhood in Sacramento.
>
> Before my time in prison while I was on the streets I lived in Rancho Cordova and I would often hang out at the Seven-Eleven located on Mills Station Road. I knew the woman that was the manager because for a time we lived next door to her on Portsmouth in Rancho Cordova.
>
> She also had an employee at the Seven-Eleven who went by the name of "Skitch" or "Sparky". He was a white male, about 40, 5'10" to 6'0", with a beard. I think they may have been married.
>
> During that time, the early to mid 90's, I would make my money from selling drugs so I knew what was happening in the Rancho Cordova. [sic] I knew that "Sparky" was operating a drug business from the Seven-Eleven. He would trade drugs, usually crack cocaine and crank for merchandise in the store. I would trade with him myself on the average of about 2-3 times per week. In return I would get cigarettes, food and beer usually. I remember when his wife found out, she got really mad at him. There were several other people that I know by name that also traded with "Sparky".
>
> One time I remember that "Sparky" was right in the middle of a transaction when the cops rolled up and "Sparky" told the cops the same story that he told them about [petitioner], causing that person to get in trouble.

/////

/////

---

[4] Richard Ward's declaration is attached to the end of petitioner original petition for writ of habeas corpus, which was filed January 4, 2002.

6

> "Sparky" had a reputation in the community for doing drug business out of the Seven-Eleven. He would work the graveyard shift when all of the dope fiends would be out.

Ward Decl. at 1-2. Without considering the credibility and relevancy issues associated with the presentation of this testimony, petitioner has not shown that his trial counsel's performance fell below an objective standard of reasonableness because he has not shown that any trial counsel acting in a reasonable manner would have identified Mr. Ward as a potential witness to help petitioner's case. As indicated by Mr. Ward, petitioner learned of Mr. Ward's story when the two met in prison. Petitioner does not explain how his trial counsel could have or should have found Mr. Ward any earlier, or any other evidence which might have helped petitioner's case. Petitioner's first assertion of ineffective assistance of counsel should be rejected.

### 2. Failure To Object To Video

Petitioner asserts trial counsel should have objected to the presentation of a videotape recording depicting the events described above as occurring on January 19, 1996, at about 2 a.m. Am. Pet. at 11:10-25. Petitioner asserts trial counsel should have objected because the tape did not have audio and the audio portion of the tape would have proved petitioner's innocence. However, as indicated below, there is no way of knowing exactly what the audio portion of the tape would have revealed. In any event, petitioner has not shown that the audio portion of the tape was available to counsel at trial.

### 3. Failure to Object To Evidence That Petitioner Had Outstanding Warrants

Petitioner claims that his trial counsel was ineffective "because he failed to object to the admission of hearsay evidence, i.e. that petitioner had an outstanding warrant." Am. Pet. at 11:26-28. Richard Askelson testified that, when confronted by petitioner, petitioner told him among other things that petitioner had an outstanding warrant. RT[5] 186:14-17. Also, a tape of a conversation Askelson had with a 9-1-1 dispatcher was played during which Askelson informed

---

[5] RT stands for Reporter's Transcript.

1  the dispatcher that the person who robbed his store said he had outstanding warrants. RT
2  203:18-204:23; CST[6] 1-3. Petitioner fails to present any California law suggesting the evidence
3  referenced above was improperly admitted. Therefore, petitioner has not shown that his
4  counsel's conduct was objectively unreasonable or that counsel's action's prejudiced petitioner's
5  case in some way. Petitioner claims counsel should have objected because there was not a
6  warrant for petitioner's arrest during the relevant time frame. Am. Pet. at 11:28-12:2. However
7  this would not have been a valid ground for an objection because whether petitioner actually had
8  a warrant against him had little bearing on whether petitioner told Richard Askelson that he did.
9  Finally, petitioner asserts trial counsel should have investigated whether petitioner had a warrant
10 against him during the relevant time frame. Am. Pet. at 12:2-3. However, petitioner fails to
11 articulate how this would have helped his case and fails to even show that such evidence would
12 have been admissible.

   B. Lost Evidence

14         Petitioner claims that his right to due process was violated by the prosecution
15 because someone affiliated with the prosecution lost a videotape with audio depicting petitioner's
16 confrontation with Richard Askelson. Am. Pet. at 12:7-11. The tape presented to jurors did not
17 contain audio. Id. Petitioner claims the audio portion of the tape would have provided jurors
18 with exculpatory evidence. Id. This claim was presented to the California Supreme Court on
19 collateral review. Answer, Ex. K at 10-11. The claim was denied without comment. Id., Ex. L.
20 No court issued a reasoned opinion with respect to this claim.
21         Petitioner concedes that in order to prevail on his lost evidence claim, he must
22 show that state officials acted in bad faith when they failed to preserve the tape with sound. See
23 Arizona v. Youngblood 488 U.S. 51, 58 (1988).
24 /////
25
26         [6] CST stands for Clerk's Supplemental Transcript.

Before trial, the manager of the convenience store indicated that she saw police officers take one videotape. She was not sure if they took two tapes. RT 44:21-45:10. Therefore, it is not clear whether police officers ever took possession of the tape with sound. Second, even if the court assumes the police took possession of the tape at the scene, there is nothing suggesting the police officers knew that the audio was exculpatory or even decipherable. The store manager's testimony regarding the tape with audio is not entirely clear, but it appears to reflect that no clear audiotape was made of the incident; at most when she played the tape with audio for police officers, "two voices" could be detected. RT 16:16-19:18. Nothing in the record suggests that the officers who collected evidence at the convenience store knew what the audio portion of the tape recording would reveal or whether they would be able to create a transcription of what was on the tape. Furthermore, nothing in the record indicates a tape with audio track was ever booked into evidence at the police station.

For the court to find that the officers acted in bad faith there would have to be a showing that the police officers knew what the audio portion of the tape revealed or that police officers intentionally discarded the tape in bad faith. No such showing has been made. Therefore, petitioner's claim regarding the loss of the tape with audio must be rejected.

C. "Outstanding Warrants"

In claim 4, petitioner asserts the prosecution knowingly presented false evidence at trial. Am. Pet. at 13:18-14:5. Petitioner asserts correctly that, under federal law, a conviction obtained through the prosecution's use of evidence known to be false must be reversed. Napue v. Illinios, 360 U.S. 264, 268 (1959). This claim was presented to the California Supreme Court on collateral review. Answer, Ex. K at 12. The claim was denied without comment. Id., Ex. L. No court issued a reasoned opinion with respect to this claim.

As noted above Richard Askelson testified that, when confronted by petitioner, petitioner told him among other things that petitioner had an outstanding warrant. RT 186:14-17. Also, a tape of a conversation Askelson had with a 9-1-1 dispatcher was played during which

Askelson informed the dispatcher that the person who robbed his store said he had outstanding warrants. RT 203:18-204:23; CST 1-3. This is the evidence petitioner claims was "false" because, according to petitioner, the prosecution should have known that petitioner did not have outstanding warrants when petitioner confronted Askelson.

Petitioner fails to present anything indicating the prosecution had reason to believe petitioner did not tell Richard Askelson that he had outstanding warrants. Whether petitioner actually had outstanding warrants is immaterial because Askelson did not tell jurors that petitioner had outstanding warrants, just that petitioner told Askelson that petitioner did. No showing has been made indicating false evidence was knowingly presented by the prosecution. In other words, nothing suggests anything presented by the prosecution was fabricated with the help or knowledge of the prosecution. Claim 4 must be rejected.

In claim 3, petitioner claims the trial court should have sua sponte instructed jurors with respect to the manner in which they could consider the testimony of Richard Askelson and the portion of the 9-1-1 tape identified above. This claim also was presented to the California Supreme Court on collateral review. Answer, Ex. K at 11-12. The claim was denied without comment. Id., Ex. L. No court issued a reasoned opinion with respect to this claim.

Petitioner does not assert specifically how jurors should have been instructed. Furthermore, petitioner fails to present any legal authority in support of his claim and therefore has not met his burden of showing that he is not precluded from obtaining relief under 28 U.S.C. § 2254(d).

Even if the court finds that jurors should have been instructed in some manner other than the way in which they were, petitioner is not entitled to relief unless he can show that failure to give a particular instruction had substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Petitioner makes no attempt to show injury based on the failure to give a particular instruction. Moreover, given the eyewitness testimony of Richard Askelson, and petitioner's flight from police officers,

any failure to instruct the jury with respect to how they could consider the fact that petitioner told Askelson about outstanding warrants had limited, if any, effect on the decision reached by the jury.

IV.  Conclusion

For all of the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be denied.

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 6, 2007.

U.S. MAGISTRATE JUDGE

1
hubb0023.157